UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
Eastern        DIVISION

|  |  |  |
|---|---|---|
| Byron E. Blake, JR | ) ) ) ) ) | **Complaint for a Civil Case** |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) ) ) ) ) ) ) ) ) | Case No. *(to be assigned by Clerk of District Court)* Plaintiff requests trial by jury: ☒ Yes  ☐ No |
| **v.** | ) ) ) |  |
| Cash Jones d/b/a Wack 100 | ) ) ) ) ) |  |
| *(Write the full name of each defendant. The caption must include the names of all of the parties. Fed. R. Civ. P. 10(a). Merely listing one party and writing "et al." is insufficient. Attach additional sheets if necessary.)* | ) ) ) ) ) ) ) ) |  |

## CIVIL COMPLAINT

*NOTICE:*

*Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date, the full name of a person known to be a minor, or a complete financial account number. A filing may include only: the last four digits of a social security number, the year of an individual's birth, a minor's initials, and the last four digits of a financial account number.*

*Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.*

*In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed without prepaying fees or costs.*

**I.       The Parties to This Complaint**

**A.       The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Byron E. Blake Jr |
| Street Address | 1303 Fox Chase Dr |
| City and County | St. Charles, St. Charles County |
| State and Zip Code | Missouri 63301 |
| Telephone Number | (773) 913-5737 |
| E-mail Address | Officialbyronblake@gmail.com |

**B.       The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Cash Jones d/b/a Wack 100 |
| Job or Title | |
| Street Address | 38712 Annette Ave |
| City and County | Palmdale, Los Angeles |
| State and Zip Code | California, 93551 |
| Telephone Number | 661- 810-6979 |
| E-mail Address | N/A |

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.  If you are suing for violation of your civil rights, you must state whether you are suing each defendant in an official capacity, individual capacity, or both.)*

2

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only three types of cases can be heard in federal court. Provide the information for this case. *(Include all information that applies to your case)*

### A.    Federal question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    Suit against the Federal Government, a federal official, or federal agency

List the federal officials or federal agencies involved, if any.

### C.    Diversity of Citizenship

These are cases in which a citizen of one State sues a citizen of another State or nation, and the amount at stake is more than $75,000.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

1.    The Plaintiff(s)

The plaintiff, *(name)*  Byron E. Blake, Jr  , is a citizen of the State of *(name)*  Missouri  .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

3

2.      The Defendant(s)

If the defendant is an individual

The defendant, *(name)* _____ Cash Jones _____ , is a citizen

of the State of *(name)* _____ California _____ *Or* is a citizen

of *(foreign nation)* _____ .

If the defendant is a corporation

The defendant, *(name)* _____ .

is incorporated under the laws of the State of *(name)*

_____ , and has its principal place of

business in the State of *(name)* _____ *Or*

is incorporated under the laws of the State of *(foreign nation)*

_____ , and has its principal place

of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.      The Amount in Controversy

The amount in controversy----the amount the plaintiff(s) claims the defendant(s) owes or the amount at stake----is more than $75,000, not counting interest and costs of court, because *(explain)*:

Plaintiff is requesting $500,000.00 or an amount to be determined at trial in excess of $75,000.00

4

## III.    Statement of Claim

Type, or neatly print, a short and plain statement of the **FACTS** that support your claim(s).  For every defendant you have named in this complaint, you must state what he or she personally did to harm you.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Do not make legal arguments, or cite court cases or statutes. You may attach additional pages if necessary.

Your statement of claim must include all of the following information:

1.      What happened to you?
2.      When did it happen?
3.      Where did it happen?
4.      What injuries did you suffer?
5.      What did each defendant personally do, or fail to do, to harm you?

See attached document.

## IV.    Relief

State briefly and precisely what damages or other relief you want from the Court.  Do not make legal arguments.

See attached document.

Do you claim the wrongs alleged in your complaint are continuing to occur now?

Yes ☒  No ☐

Do you claim actual damages for the acts alleged in your complaint?

Yes ☒  No ☐

Do you claim punitive monetary damages?

Yes ☒  No ☐

If you indicated that you claim actual damages or punitive monetary damages, state the amounts claimed and the reasons you claim you are entitled to recover these damages.

I am claiming $400,000.00 in punitive damages as I have suffered severe reputational harm as a result of the defendant's defamation on multiple platforms which have a combined total of over 5 million subscribers. I am also claiming $100,000.00 in actual damages as I lost my YouTube channel, which generated over $25,000 a year, as a direct result of the defendant's actions.

## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __21__ day of _____July_____, 20 _26_.

Signature of Plaintiff(s)_____*Byron E Blake Jr*_____

_____

6

BYRON E. BLAKE, JR., )
)
Plaintiff, )
)
v. ) Case No. _____
) (To be assigned by Clerk)
CASH JONES, d/b/a WACK 100, )
)
Defendant. )
_____)

**CIVIL COMPLAINT**
**(JURY TRIAL DEMANDED BY PLAINTIFF)**

Plaintiff Byron E. Blake, Jr., proceeding *pro se*, brings this Civil Complaint against Defendant Cash Jones, doing business as Wack 100, and respectfully states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Byron E. Blake, Jr. is an individual and a citizen of the State of Missouri, residing in St. Charles County, Missouri.
2. Defendant Cash Jones, doing business as "Wack 100," is an individual and a citizen of the State of California, residing in Palmdale, California.
3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) because the Plaintiff and the Defendant are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.
4. Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and the severe economic injuries giving rise to the claims occurred within this judicial district, where Plaintiff operates his business and digital assets.

**STATEMENT OF FACTS**

5. Plaintiff owned, managed, and operated a commercial digital content business on the YouTube platform via his channel named "Byron Blake," which he managed primarily from his home residence in St. Charles County, Missouri.
6. Plaintiff also maintains a public digital business presence on the Instagram platform under the verified handle "@officialbyronblake".
7. Plaintiff's YouTube channel and news reporting primarily focused on analyzing and publishing public records, court paperwork, and digital media surrounding hip-hop culture, including verified public records demonstrating Defendant Cash Jones' interactions with law enforcement.
8. Prior to June 21, 2026, public evidence became available demonstrating that Defendant Cash Jones was actively providing, and orchestrating the provision of, information to law enforcement agencies.
9. Following the emergence of this verifiable evidence, Plaintiff publicly referred to Defendant as an "informant" based entirely on the underlying factual records.
10. On June 21, 2026, in direct retaliation, Defendant Cash Jones published a widely distributed post on his verified Instagram account tagging the Plaintiff's exact business handle and stating textually: "@officialbyronblake X we have 3 more on the list... young ant jefe honored my request so he's safe as of now... Sincerely, the Xposers. Took me 6 months to put this team together. We couldn't match your lies so we're playing it dirty.. Best 10,000 I've ever spent...."
11. Through this widely distributed publication, Defendant falsely accused Plaintiff of being a "liar" regarding the factual law enforcement records, knowingly publishing an absolute falsehood to damage Plaintiff's professional integrity.
12. On that exact same day, June 21, 2026, Plaintiff's commercial YouTube channel "Byron Blake" was suddenly and completely terminated by the platform.

13. Through his explicit written admission, Defendant confirmed that he hired and paid a $10,000 bounty to an illicit cyber-coordination squad coined "the Xposers" to "play it dirty," execute bad-faith takedowns, and successfully orchestrate the targeted deletion and removal of Plaintiff's channel.

14. On July 12, 2026, Defendant Cash Jones appeared as a featured guest on the broadcast "The Adam22 and Wack 100 Show" on the "No Jumper" YouTube network.

15. During this public broadcast, Defendant openly boasted about and detailed his malicious business strategy of weaponizing false reporting mechanisms to financially destroy his targets online, explicitly stating: "YouTube land... this ain't the streets... over here we metabanging. This is the metaverse. So if you want to sit behind a camera and run fake narratives and play keyboard warrior then I can launch meta nukes. I can meta snatch your shit in a meta major way."

16. Defendant further confirmed on the broadcast that his express intent in deploying these bad-faith campaigns is to inflict severe economic ruin, stating openly: "Hurting his pockets hurt different... some of these people ain't no off limits because when you go to talking crazy... it's on so what I boom blew your shit up."

17. Defendant Cash Jones has a documented, publicly admitted history of using digital platforms to aggressively combat, suppress, and manipulate public narratives whenever individuals publish paperwork linking him to federal agencies or law enforcement cooperation.

18. In a public interview broadcasted on the "VladTV" media network, Defendant explicitly discussed how he handles allegations of law enforcement cooperation and federal wiretaps, stating openly that his practice when dealing with "exposers" is to look at how they play the game and "play the game back."

19. Defendant further admitted in the same VladTV broadcast that when federal law enforcement agents or investigators contact him, his strict pattern of conduct is to immediately record and leak the scenarios onto the internet within 24 hours specifically to dictate public narratives, preemptively screaming that allegations against him are "lies" or "fake" to manipulate his audience.

20. On or about November 9, 2022, Defendant Cash Jones publicly released a recorded telephone conversation between himself and an agent of the Federal Bureau of Investigation (FBI), which was subsequently published widely across cyberspace networks.

21. During this recorded federal phone call, the investigating FBI agent explicitly questioned Defendant regarding his public, multi-platform disputes, text streams, and online disagreements with industry figures, stating to Defendant: "...we were providing information that possibly something went beyond that and so we're just calling to clarify and make sure that you haven't been threatened... regarding the disputes that you've had over social media over YouTube over Instagram and all of that."

22. In response to the federal investigator on that call, Defendant openly discussed his public disputes and personal knowledge of ongoing music industry legal affairs, confirming his baseline pattern of behavior of directly communicating with federal agencies regarding online conflicts.

23. Defendant's own published audio archives explicitly prove that he has long-standing, active communication channels with federal law enforcement regarding social media disputes, demonstrating that his public leaks are strategically utilized to control narratives.

24. On or about March 17, 2025, an official federal criminal complaint was filed in the United States District Court for the Central District of California under Case No. 2:25-mj-01494-DUTY, titled *United States of America v. Eugene Henley* (also known as "Big U").

25. Page 52 of this official federal court document explicitly names and transcribes Defendant Cash Jones participating in a public media broadcast where he breaks down and explains the extortion, manipulation, and robbery tactics used by Henley against various victims, specifically stating: "You know why he wanted to give the dude back the $40, right?

Because he was going to make the dude give him $20 for getting it back." (A true and correct copy of this specific page 52 is attached hereto as **Exhibit A**).

26. The federal government explicitly relied upon, cited, and incorporated Defendant Cash Jones' detailed analytical statements within the body of their official criminal complaint to corroborate their active RICO and extortion investigation into the targeted criminal enterprise.

27. Plaintiff's public reporting and commentary accurately summarized these exact court records, stating that Defendant Cash Jones acted as an informant by utilizing an unconventional "open-source reporting" method—specifically, going onto highly publicized podcasts to intentionally broadcast investigative facts, criminal methods, and insider information with the knowledge and expectation that law enforcement agencies monitor and ingest those broadcasts for prosecution.

28. This open-source investigative funnel is further corroborated by recorded telephone conversations orchestrated and subsequently leaked by Defendant Cash Jones involving an individual named "Williams" and a cooperating federal witness designated as "Victim-1."

29. Specifically, on a public broadcast network, Defendant published and participated in a recorded multi-party telephone conversation involving himself, the individual known as "Williams," and the cooperating federal witness designated as "Victim-1."

30. During this multi-party phone transmission, Defendant Cash Jones actively directed the flow of the conversation, manipulating the dialogue to extract specific incriminating details regarding Eugene "Big U" Henley's criminal operations.

31. On a subsequent public broadcast, Defendant Cash Jones explicitly and subjectively admitted on tape that he was a direct participant in the aforementioned telephone conversation with "Williams" and "Victim-1."

32. Defendant Cash Jones has publicly admitted that "Victim-1" explicitly confided in him that he was actively cooperating with federal law enforcement to secure an indictment against Henley.

33. Despite having subjective knowledge that "Victim-1" was actively cooperating with the government, Defendant Cash Jones intentionally orchestrated the telephone call to extract statements framing Henley as the sole individual responsible for the underlying criminal acts.

34. Defendant Cash Jones then published this orchestrated recording to the internet, tracking his established pattern of using open-source channels to deliver actionable investigative material to federal agencies while publicly masking his cooperation as social media content.

35. Because the official federal court record in Case No. 2:25-mj-01494-DUTY explicitly confirms that the federal government used Defendant's public statements to build their criminal case, Plaintiff's statements labeling Defendant an "informant" or "cooperator" were entirely true and legally protected.

36. Defendant Cash Jones possessed full knowledge of his own recorded audio admissions and federal court citations. He maliciously published the June 21, 2026 statement branding Plaintiff a "liar" solely as a defamatory device to shield his street persona, activate his paid squad ("the Xposers"), and tortiously destroy Plaintiff's commercial YouTube asset.

37. Defendant's public admissions on VladTV and No Jumper directly establish his subjective motive and intent to target the Plaintiff: because Plaintiff possessed and discussed verifiable evidence demonstrating Defendant's cooperation with law enforcement, Defendant deployed his paid squad, fabricated the narrative that Plaintiff was a "liar," and permanently sabotaged Plaintiff's business to stop the dissemination of his records.

38. As a direct and proximate result of Defendant's false statement branding Plaintiff a "liar," third-party platform users, subscribers, and digital network moderators actually altered their perception of Plaintiff's integrity and honesty, believing Plaintiff to be a systemic fabricator of news.

39. The widespread dissemination of Defendant's malicious falsehood directly triggered a wave of massive, bad-faith reporting by platform users, acting as the direct mechanism that caused the instant, permanent termination of Plaintiff's commercial YouTube asset, "Byron Blake."

40. Following the publication of Defendant's defamatory statement and the subsequent destruction of his channel, valid business affiliates, content networks, and digital advertising sponsors refused to continue associations with Plaintiff, citing the public allegations of fabrication and professional dishonesty.

41. The financial impact of this reputational destruction is concrete, measurable, and severe: the permanent deletion of the "Byron Blake" channel instantly cut off Plaintiff's verified monthly monetization revenues, digital sponsorships, and ongoing business expectancies, inflicting actual, non-speculative economic damages well in excess of $75,000.

## COUNT I
## DEFAMATION

42. Plaintiff incorporates paragraphs 1 through 41 as if fully set forth herein.

43. Defendant published a false, unprivileged statement of fact on a public social media platform explicitly targeting the Plaintiff by name and username.

44. Defendant's statement falsely claiming Plaintiff is a "liar" maliciously and directly impugned Plaintiff's professional integrity, journalistic honesty, and business character.

45. Defendant acted with actual malice and total reckless disregard for the truth, as he possessed subjective knowledge that Plaintiff's coverage was true and derived from official federal court records, yet he openly admitted to spending $10,000 to coordinate a campaign to "play it dirty" against the Plaintiff.

46. Defendant knew his public branding of Plaintiff as a "liar" was entirely false, but deployed the falsehood as a calculated narrative-control tactic to instantly destroy Plaintiff's journalistic credibility and protect his own commercial brand from public records exposure.

47. As a direct and proximate result of Defendant's published falsehoods, Plaintiff suffered severe, concrete, and actual tortious injury to his personal and professional reputation, resulting in the immediate bad-faith termination of his commercial YouTube channel, the total destruction of his digital brand equity, and actual financial losses exceeding $75,000.

## COUNT II
## CIVIL CONSPIRACY

48. Plaintiff incorporates paragraphs 1 through 47 as if fully set forth herein.

49. Defendant entered into a deliberate agreement and combination with two or more individuals known as "the Xposers" to accomplish an unlawful and tortious purpose: the bad-faith destruction of Plaintiff's business assets and the publication of malicious defamation.

50. Defendant performed a calculated overt act in direct furtherance of this conspiracy by funding the operational activities of this group with a documented $10,000 financial payment.

51. As a direct and proximate result of this conspiracy, Plaintiff's commercial YouTube channel was terminated and his professional reputation was severely damaged, resulting in actual economic injuries exceeding $75,000.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

52. Plaintiff incorporates paragraphs 1 through 51 as if fully set forth herein.

53. Plaintiff maintained valid business relationships, monetization agreements, and clear business expectancies with video platforms, social networks, and commercial sponsors.

54. Defendant Cash Jones had explicit, subjective knowledge of Plaintiff's monetized business operations under his brand name and social media channels.

55. Defendant intentionally, maliciously, and without legal justification interfered with those business relationships and expectancies by launching what he termed a "meta nuke"

campaign, directly forcing the bad-faith termination and removal of Plaintiff's YouTube asset.

56. Defendant's interference was executed entirely through improper and tortious means, specifically actionable defamation, malicious falsehoods, and civil conspiracy.

57. Defendant utilized improper and anti-competitive means to suppress commercial reporting regarding his public records, intentionally using economic destruction to eliminate Plaintiff's digital platform as a competitor in the digital media and reporting space.

58. As a direct and proximate result of Defendant's improper interference, Plaintiff's valid business relationships were severed, completely terminating his digital income and causing severe financial damage exceeding $75,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Byron E. Blake, Jr. respectfully requests that this Court enter judgment in his favor and against Defendant Cash Jones, d/b/a Wack 100, and award the following relief:

- a) Compensatory, economic, and actual damages for injury to business revenue, reputation, and emotional distress in an amount to be determined at trial, but strictly exceeding $75,000;
- b) Punitive and exemplary damages to punish Defendant's intentional, malicious, and explicit conduct in an amount to be determined at trial;
- c) An order for permanent injunctive relief forcing Defendant to cease and desist from making defamatory statements or utilizing bad-faith reporting mechanisms against Plaintiff's digital channels;
- d) An award of all court costs, post-judgment interest, and any other relief this Court deems just, proper, and equitable.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July ____, 2026

Respectfully submitted,


Byron E. Blake, Jr., Plaintiff *pro se*
1303 Fox Chase Dr
St. Charles, MO 63301
(773) 913-5737
Officialbyronblake@gmail.com

robbers put Victim-1 on the phor

Victim-1 to HENLEY's home.

98.   According to Victim-1,

HENLEY's ARLINGTON PREMISES, RO

robbers were there, as were the

Inside, HENLEY told Victim-1, "

HENLEY then demanded $10,000 fr

robberies did not occur.   HENLE

identify other businesses or di

similarly robbed and assured Vi

would compensate him for identi

then provided a portion of the

1.[19]

"You know why he wanted to give

Because he was going to make the

it back."  WILLIAMS then agreed

two famous rappers.  WILLIAMS t

from the celebrity rapper R.R. o

rapper M.M.  WILLIAMS then said

and HENLEY stopped answering the

any of the proceeds with WILLIA

Jumper" and "VladTV" segments,

desist order on "No Jumper," and

removed from the platform, altho

remained available elsewhere on

100. WILLIAMS's recounting